UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


A. MICHAEL COLEMAN,              :     **CASE NO. 1:11-CV-0912**
                                 :
            Plaintiff            :     (Magistrate Judge Smyser)
                                 :
       v.                        :
                                 :
                                 :
JAMES ARMBRUSTER and             :
THE BOROUGH COUNCIL OF THE       :
BOROUGH OF PENBROOK,             :
                                 :
            Defendants           :


### MEMORANDUM OPINION


**Background**.

        The plaintiff is A. Michael Coleman, who has a

Harrisburg address.  The defendants are James Armbruster, who

is the Borough Manager of Penbrook Borough, a Pennsylvania

municipal corporation and political subdivision, and the

Penbrook Borough Council.


        The complaint was filed in the Court of Common Pleas of

Dauphin County on November 3, 2010.  An amended complaint was

filed on April 11, 2011.  The amended complaint was removed to

this court on May 12, 2011.  A motion to dismiss three of the
four counts of the amended complaint is now pending.

**The Amended Complaint**.

      The amended complaint alleges that the defendants filed
civil and criminal charges against the plaintiff, charging that
he filed false tax returns in 2007 and 2008.[1]  The citations
brought against the plaintiff by the defendants were later
withdrawn.  The amended complaint alleges that the "false tax
return" language was inserted by defendant Armbruster, who
signed the citations, for the purposes of stigmatizing the
plaintiff and damaging his reputation.  It alleges that the
defendants also took other actions for the same purposes.  In
particular, the defendants caused a letter to be published in
the *Penbrook Community News* in which, with implicit reference
to the plaintiff, he was called a "scofflaw" and a person who
"refuse[s] to pay [his] fair share of taxes" and "to pay [his]

---

1.  Copies of the citations are filed with the amended complaint.
The citations charge violations of Section 238-53(A)(2) of the
Penbrook Borough Code, i.e., that the plaintiff failed to file
copies of federal tax returns with his 2007 and 2008 Penbrook
Borough business privilege tax returns.  But they also contain as
a "Nature of Offense" description the words "Filing a False 2007
Tax Return" and "Filing a False 2008 Tax Return."

business taxes as [a landlord]."[2]  It was also implied in the

_____

2.  The text of the letter is:

> Dear Neighbors,
>
> I'm sure you've seen reports on the TV and in the newspapers, and signs placed around the Borough talking about code violations. You should know that all of this is being caused by three absentee landlords. All three have been sent citations for violating the Penbrook Borough Code. Two refused to pay their business taxes as landlords and one received a property violation. None of these people live with us in the Borough.
>
> Why are they unhappy and causing such a stir? Because they want you to believe that the Borough has treated them unfairly, and you may be next. They have unjustly accused members of Borough Council of using citations to increase Borough coffers. The truth is that the Borough never issues violation notices without first determining that a violation of the code has occurred. These situations lower the quality of life in the Borough and create an atmosphere where crime can thrive. If a property owner continues to ignore the law, even after several notices are sent, the Borough has no choice but to issue a citation. Once these are issued, 80% or more of those who receive them fix the violation. When a violation is corrected, the Borough routinely withdraws the citation. Only those property owners who continue to refuse to obey the law end up in court.
>
> The recently formed Penbrook Landlords Association has told the Borough Council, in a public meeting as recently as February 28, 2011, that they DO NOT support this litigation against the Borough. They feel the banners and the litigation drag down property values and they are very concerned. So, what has all this cost you, the taxpayer??? The answer is NOTHING! The litigation is being vigorously fought by attorneys for our insurance companies. While it is the policy of

(continued...)

3

letter that the plaintiff had violated Borough trash laws and ordinances.

The amended complaint asserts that the defendants' efforts to stigmatize the plaintiff by the letter in the *Penbrook Community News* was submitted in reaction to and that it had reference to "those who have posted signs throughout the Borough." (Doc. 1-2 at ¶ 36).

The amended complaint asserts that on May 11, 2010, the plaintiff attempted to pay his business license fee to the Borough of Penbrook.  Defendant Armbruster refused to accept

---

2.  (...continued)
the Borough Council not to comment on pending litigation I can only say that I believe that the allegations are baseless and that Dauphin County Court will shortly dismiss them.

I hope you understand why it has been necessary to fight to have our ordinances enforced. To do otherwise would mean we all would be living with trash throughout the Borough and scofflaws who refuse to pay their fair share of taxes, leaving you to pick up the slack. Thank you for your support during these troubling and difficult times.

s/ James M. Armbruster

(Doc. 1-3, p. 2).

4

the fee, and he refused to issue a business license.  He shoved
the plaintiff's papers into the plaintiff's face, making bodily
contact.  Defendant Armbruster then filed the citations that
are referred to above, and a third citation charging a
violation under Section 238-54, operating a business without a
license.  The amended complaint asserts that defendant
Armbruster's actions were intended to intimidate the plaintiff
into complying with Section 238-53(A)(2), in violation of the
Fourth Amendment to the Constitution of the United States.

Count I of the amended complaint contains a state law
claim of defamation, claiming that the "false tax returns"
statements in the citations and the statements in the *Penbrook
Community News* are defamatory.

Count II contains a state law claim of malicious
prosecution claiming that civil[3] and criminal charges brought
against the plaintiff were without probable cause, were false,

---

3.  The specific civil charges do not appear to be identified in
the amended complaint.

were with malice, and were terminated in favor of the plaintiff.

Count III contains a state law claim of battery.

Count IV contains a 42 U.S.C. § 1983 claim of violations by persons acting under color of state law of the federally protected rights of the plaintiff.

**The Pending Rule 12(b)(6) Motion to Dismiss**.

The pending motion was filed on May 19, 2011.  A brief in support and a brief in opposition have been filed.  The motion asks the court to dismiss Counts I, II and IV.

**The Removal Statute and Potential Remand**.

28 U.S.C. § 1441(c) provides:

Whenever a separate and independent claim or
cause of action within the jurisdiction
conferred by section 1331 of this title is
joined with one or more otherwise non-removable
claims or causes of action, the entire case may
be removed and the district court may determine
all issues therein, or, in its discretion, may
remand all matters in which State law
predominates.

6

The plaintiff's 42 U.S.C. § 1983 claims in Count IV are claims over which this court has jurisdiction under 28 U.S.C. § 1331.  Count IV, for the reasons stated below, does not state a claim upon which relief can be granted.  The other claims in the amended complaint are, if not "separate and independent" state law claims and causes of action, then pendent or supplemental claims over which the court, having dismissed the federal question claims, may decline to exercise supplemental jurisdiction and may remand to state court, 28 U.S.C. § 1367(c)(3).  *See Borough of West Mifflin v. Lancaster,* 45 F.3d 780 (3d Cir. 1995); *Balazik v. County of Dauphin,* 44 F.3d 209, 216-217 (3d Cir. 1995).

At oral argument, the parties agreed that the case should be remanded if Count IV is dismissed.  We do not perceive there to be a reason why the federal court should retain the case for the sole purpose of adjudicating the state law claims of defamation, malicious prosecution and battery.  Accordingly, we will exercise discretion in favor of remanding these non-federal claims and causes of action to the Dauphin County Court of Common Pleas.  The defendants' motion to

dismiss the complaint as to Counts I and II will not be addressed herein for that reason.

**Rule 12(b)(6) Standard**.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests.

8

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Id.*  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly, supra,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

9

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  But "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011).  Rule 8(a)(2) "requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.*  The factual detail necessary to satisfy the standard will vary depending on the case. *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

**The Motion to Dismiss Count IV**.

Count IV contains essentially three separate claims or causes of action, one based upon the Fourth Amendment, one based upon the First Amendment and one based upon the Fourteenth Amendment.

**<u>The Fourth Amendment Claim</u>**.

The plaintiff's Fourth Amendment claim is that the requirement in the Penbrook Borough Code that a business privilege tax return be accompanied by a copy of the taxpayer's federal tax return violates the Fourth Amendment.  The federal tax return can be used as an aid in ascertaining the correct business privilege tax.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions.'" *Delaware v. Prouse,* 440 U.S. 648, 653-54 (1979)(footnote omitted)(quoting *Marshall v.*

11

*Barlow's Inc.,* 436 U.S. 307 (1978)).  "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 654.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo,* 476 U.S. 207, 211 (1986)(quoting *Katz v. United States,* 389 U.S. 347, 360 (1967)(Harlan, J., concurring)).  This entails "a two part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *Id.*

"[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York,* 445 U.S. 573, (1980)(quoting *United States v. United States District Court,* 407 U.S. 297, 313 (1972)).  "Private residences are places in which the

individual normally expects privacy free of government

intrusion not authorized by a warrant, and that expectation is

plainly one that society is prepared to recognize as

justifiable." *United States v. Karo,* 468 U.S. 705, 714 (1984).

Of course, "a person can have a legally sufficient interest in

a place other than his own home so that the Fourth Amendment

protects him from unreasonable governmental intrusion into that

place." *Rakas v. Illinois*, 439 U.S. 128, 142 (1978).

Also, the Fourth Amendment has applicability to

searches and seizures of persons' books, records and

electronically stored data, but only in the context where a

government agent is acting to search and/or seize the books,

records or data.  There is not any authority cited by the

plaintiff that a governmental requirement of documentation to

support an application for a government license can be

considered to be a search or seizure.

Here, the plaintiff was not arrested, his home was not

invaded, and no property or papers of his were seized.  He had

been directed by the defendant borough officials to provide to

13

them copies of documents that he prepared and submitted to
federal government officials in compliance with a federal
government mandate.  The information that he recorded and
supplied in those documents is understandably perceived by him
as confidential, and it is reasonable to assume that he
considers the disclosure to be invasive as to his expectation
of privacy.  But the required disclosure is not in the nature
of a search or a seizure.  First and foremost, it is not
unconditional as is a search or seizure.  It is a disclosure
that is conditioned upon a person's application to conduct
business in the borough.  At argument, counsel for the
plaintiff reasonably conceded that the borough may request the
financial information it seeks to obtain by mandating the tax
returns, but proposed that an affidavit of the plaintiff would
suffice.  Whether or not that would represent better borough
policy, the mandate of disclosure in the form of copies of tax
returns as a condition of obtaining a borough business license
is not a Fourth Amendment violation.  Secondly, the state's
objective is not to obtain evidence of a crime, and the
probable cause requirement for a search or seizure would be

inapposite.  There is no search, there is no seizure and there
is no unreasonable invasion of privacy.

### **The First Amendment Claim**.

The First Amendment provides:

> Congress shall make no law respecting an
> establishment of religion, or prohibiting the
> free exercise thereof; or abridging the freedom
> of speech, or of the press; or the right of the
> people peaceably to assemble, and to petition
> the government for a redress of grievances.

Retaliation for the exercise of First Amendment rights is a
constitutional violation.  *Mount Healthy City Board of
Education v. Doyle*, 429 U.S. 274 (1977); *White v. Napoleon*, 897
F.2d 103, 111-12 (3d Cir. 1990)("Retaliation for the exercise
of constitutionally protected rights is itself a violation of
rights secured by the Constitution actionable under section
1983.").

As correctly stated in the defendants' brief:

> A plaintiff must prove four elements to
> successfully establish a First Amendment
> retaliation claim: (1) that he engaged in a
> constitutionally-protected activity; (2) that
> the government responded with retaliation; (3)
> that the government retaliation was motivated

> or substantially caused by the protected
> activity; and (4) the government's actions
> would deter or "chill" a person of "ordinary
> firmness" from exercising his First Amendment
> rights. *Eichenlaub v. Township of Indiana,* 385
> F.3d 274, 282 (3d Cir. 2004); *Zugarek v. South
> Tioga Sch. Dist.,* 214 F. Supp. 2d 468, 476
> (M.D. Pa. 2002).

(Doc. 8, p. 25).

Paragraphs 35, 36, 37 and 38 of the amended complaint refer to persons who posted signs in the Borough, but do not indicate that the plaintiff was one of these persons.  We will assume for purposes of this analysis that he was.  The amended complaint may be construed to allege that the plaintiff was one of a class of persons, landlords having rental properties in Penbrook Borough and other persons with businesses there, which class of persons was subjected to retaliation by the defendants for the First Amendment protected speech activity of some of those persons.

However, the amended complaint goes on to allege that the basis and motivation for the defendants' conduct in charging the plaintiff with violations and in refusing to

process the plaintiff's business license application was to

obtain compliance by the plaintiff with the Borough Code

Section 238-53(A)(2) requirement of filing copies of federal

income tax returns.  Even assuming for the sake of analysis

here that the Code section in question is in some way unlawful,

the defendants' insistence upon its enforcement can not

reasonably be characterized as retaliation.  In any event, the

plaintiff presents no authority to support the position that

the Code section requirement is unlawful, but rather he

presents a number of policy arguments for why he holds the

opinion that the provision is not good public policy.  In the

absence of a basis in law to support the assertion that the

provision requiring copies of tax returns to be provided with a

business license application is unlawful, the assertion that

the defendants' enforcement of that provision is retaliatory

has no merit.

If the claim of retaliation is that the letter in the

*Penbrook Community News* was retaliatory, we do not agree.  The

letter expresses the intention of the borough officials to

enforce ordinances and to prosecute violations.  The language

chosen to describe offenders is perhaps not well chosen.   The
amended complaint does not allege that there were not
violations as the letter implies there were.


     The complaint fails to state a claim upon which relief
can be granted of retaliation for the exercise by the plaintiff
of his First Amendment rights.


          **The Fourteenth Amendment Claim**.

          Count IV of the amended complaint contains a claim that
the tax returns requirement "attempts to chill efforts by
Plaintiff to seek redress in the courts in violation of the
substantive due process rights under the 14th Amendment of the
United States Constitution."  Amended Complaint, ¶ 76.  In the
plaintiff's brief in opposition to the motion to dismiss, as to
Count IV the plaintiff further asserts that "the requirement
for the provision of tax return copies is arbitrary and
capricious and violates due process" because "[t]here has never
been any adjudication that Plaintiff has lied on his tax
returns or evaded taxes in any way . . . ."  (Doc. 9, p. 8).

> Protection against governmental arbitrariness
> is the core of due process, *e.g., Hurtado v.
> California*, 110 U.S. 516, 527, 4 S.Ct. 111,
> 116–117, 28 L.Ed. 232, including substantive
> due process, *see, e.g., Daniels v. Williams,*
> 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88
> L.Ed.2d 662, but only the most egregious
> executive action can be said to be "arbitrary"
> in the constitutional sense, *e.g., Collins v.
> Harker Heights,* 503 U.S. 115, 129, 112 S.Ct.
> 1061, 1071, 117 L.Ed.2d 261; the cognizable
> level of executive abuse of power is that which
> shocks the conscience, *e.g., id.,* at 128, 112
> S.Ct., at 1070; *Rochin v. California,* 342 U.S.
> 165, 172–173, 72 S.Ct. 205, 209–210, 96 L.Ed.
> 183.

*County of Sacramento v. Lewis,* 523 U.S. 833 (1998).

The issuance of citations to the plaintiff was executive action.  The ordinance requiring the submission of the tax returns was in the nature of legislative action.  In a substantive due process review of legislation, the presence of a legitimate state interest that the legislature could have found to rationally be served by the legislation is adequate to pass constitutional scrutiny in the absence of a fundamental right.  *Nicholas v. Pennsylvania State University,* 227 F.3d 133 (3d Cir. 2000).

19

The overarching fact here is that the plaintiff has refused to comply with the requirement that, to be licensed to conduct business as a landlord in Penbrook Borough, he must submit a copy of his federal tax return.[4]  In support of his substantive due process claim, he argues that his federal tax returns are "the most private of papers" and that there has never been any adjudication that he lied on his tax returns or evaded taxes.  (Doc. 9, p. 8).  None of these assertions advances his argument that the Borough's enforcement of the requirement that he submit copies of his federal tax returns with his borough business privilege tax returns is an arbitrary and capricious governmental action, and a person's income source(s) and amount(s) is not information the disclosure of which invades a fundamental right.

The substantive due process claim in Count IV is not a claim upon which relief can be granted.

_____

4.  It is important to note that the amended complaint does not contain a claim challenging that requirement as a matter of state law.  The only challenges to the legal validity of the Borough Code provision are the Fourth Amendment claim and the Fourteenth Amendment claim.

**Conclusion**.

        Count IV of the amended complaint fails to state a claim upon which relief can be granted.  Accordingly, the defendants' motion to dismiss Count IV will be granted as to the defendants.  This court will not address the motion to dismiss Counts I and II but will remand the case to the Court of Common Pleas of Dauphin County.  An appropriate order will follow.


                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  January 19, 2012.

21